IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | |
| JOSE RAMON GONZALEZ ALONSO | CASE NO. 11-03829 MCF |
| BRENDA  DE JESUS MERCADO | CHAPTER 7 |
| Debtors | |
| CHARTIS INSURANCE CO. OF P.R. | ADVERSARY NO. 11-00203 |
| Plaintiff | |
| JOSE RAMON GONZALEZ ALONSO | FILED & ENTERED ON 9/30/2014 |
| BRENDA  DE JESUS MERCADO | |
| Defendants | |

### <u>OPINION AND ORDER</u>

Plaintiff Chartis Insurance Company ("Chartis") filed an action against Defendants Jose R. Gonzalez Alonso ("Gonzalez") and Brenda De Jesus Mercado (hereinafter collectively, "the Debtors"),[1] seeking to deny them chapter 7 discharge,[2] under 11 U.S.C. §§ 727(a)(2), (a)(4) and (a)(5).[3] Pending before the Court is Chartis' motion for summary judgment and the Debtors' opposition thereto. For the reasons stated below, Chartis' motion for summary judgment is denied.

### I.      UNCONTESTED FACTUAL BACKGROUND

The Debtors sought Chapter 7 bankruptcy relief as result of the losses sustained as sole shareholders of their painting and construction business, San Juan Construction & Painting, Inc.

---

[1] Adversary Case No. 11-00203, Docket No. 1.
[2] Bankruptcy Case No. 11-03829, Docket No. 1.
[3] Unless otherwise indicated, the terms "Bankruptcy Code," "section" and "§" refer to Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 ("BAPCPA").

-1-

("San Juan Construction").[4] Chartis is an insurance company in the business of providing insurance and surety products for commercial and individual customers.

Prior to filing for bankruptcy, in October 1997, the Debtors and Chartis entered into an indemnity contract wherein the Debtors agreed to reimburse Chartis for any payment it made to third party subcontractors and materialsmen.[5] Pursuant to the agreement, Chartis distributed approximately $4.3 million to third-parties on the Debtors' behalf.[6] On April 8, 2002, upon the Debtors' failure to reimburse Chartis as agreed in the indemnity contract, Chartis filed a claim in the Court of First Instance of the Commonwealth of Puerto Rico (the "Commonwealth Court").[7] In June 2006, the Commonwealth Court entered judgment in favor of Chartis and against the Debtors for approximately $4.1 million plus pre-judgment interest at a 6% interest rate and $10,000 for attorneys' fees and expenses.[8]

Several years before final judgment was entered by the Commonwealth Court, the Debtors sold various real estate properties they owned; two in Palmas del Mar, Humacao, Puerto Rico[9] ("Humacao properties") and a property in Rio Piedras, Puerto Rico ("San Juan property").[10] Shortly after selling the San Juan property, Gonzalez' parents purchased a property in the vicinity of Montehiedra, San Juan ("Montehiedra property") on September 29, 1999 and the Debtors then resided in this property. [11] Gonzalez' parents, the purchasers of the property, resided elsewhere. Gonzalez' parents owned the Montehiedra property for six years. During this

---

[4] Bankruptcy Case No. 11-03829, Docket No. 1.
[5] Docket No. 95, Motion to Submit Certified Translations, Exhibit 2-A, at 49-51.
[6] Docket No. 99, "Defendant's Supplemental Response to Plaintiff's Statement of Uncontested Facts," at 3, ¶10, 18.
[7] Id. at 5, ¶18.
[8] Id. at 7, ¶28).
[9] Id. at 5-6, ¶¶19-20. The Crescent Cove condominium and the Palmas Doradas condominium are collectively referred to in this Opinion as "the Humacao properties."
[10] Id. 4, ¶13.
[11] Id. at 4, ¶14.

time the Debtors paid rent.[12] In July 2005, Gonzalez' parents sold the Montehiedra property to the Debtors' children, Jose Gonzalez de Jesus and Vanessa Gonzalez de Jesus, their grandchildren.[13]  While the Montehiedra property belonged to the Debtors' children, Debtors paid the mortgage payments.[14] In total, the Debtors lived in the Montehiedra property for eight years, from 1999 to 2007.[15]

In May 2007, the Debtors' children sold the Montehiedra property[16] due to Debtors' inability to make further mortgage payments for the property.[17] Shortly thereafter, in June 2007, the Debtors' children purchased a property in Jardines de Montehiedra ("Jardines property")[18] and the Debtors then moved to the Jardines property where they live rent free.  Certain living expenses of the Debtors are paid by their children.[19] For instance, the Debtors' daughter aids her parents with their utility expenses.[20]

In 2009, the Debtors' son, Gonzalez de Jesus founded and is the sole shareholder of Mets Contractors, Inc. ("Mets"), a corporation dedicated to painting and construction.[21] Debtors' son hired his father, Gonzalez, to work as a foreman in Mets in July 2011.  The Debtors' daughter is also employed at Mets.

---

[12] Id. at 7, ¶27.

[13] Id. at 6, ¶21. See also Docket No. 95, "Motion in Compliance with Order and Submitting Certified Translations," Public Deed, at 104.

[14] Docket No. 99, "Defendant's Supplemental Response to Plaintiff's Statement of Uncontested Facts," at 6, ¶21.

[15] Id. at 5, ¶¶15-16.

[16] Id. See also Docket No. 95, "Motion in Compliance with Order and Submitting Certified Translations," Public Deed, at 111.

[17] Docket No. 95, "Motion in Compliance with Order and Submitting Certified Translations," at 86-87.

[18] Docket No. 99, "Defendant's Supplemental Response to Plaintiff's Statement of Uncontested Facts," at 7, ¶ 31.

[19] Docket No. 95, "Motion in Compliance with Order and Submitting Certified Translations," at 89 (debtor Jose R. Gonzalez Alonzo deposition doc. at 87); Docket No. 99, "Defendant's Supplemental Response to Plaintiff's Statement of Uncontested Facts," at 8, ¶ 33.

[20] Id. at 38 (debtor Jose R. Gonzalez Alonzo deposition doc. at 93, lines 14-24); See also Docket No. 99, "Defendant's Supplemental Response to Plaintiff's Statement of Uncontested Facts," at 9, ¶36).

[21] Docket No. 95, "Motion in Compliance with Order and Submitting Certified Translations," at 18 (debtor Jose R. Gonzalez Alonzo deposition doc. at 22).

On May 4, 2011, the Debtors filed a voluntary petition under chapter 7.[22] In their filings, the Debtors did not disclose in the statement of financial affairs or in schedule B, item 21, any contingent or unliquidated claims pending judgment in the local court.[23] In December 2010, the Debtors had brought a damages claim against Autoridad de Edificios Publicos seeking monetary judgment for a slip and fall accident in the local court.[24] On February 14, 2012, almost seven months after the meeting of creditors was held,[25] the Debtors amended Schedule B and the Statement of Financial Affairs in order to include said litigation.

## II.    JURISDICTION

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334, 157(a) and the "Standing Order of Resolution for Bankruptcy Cases" dated July 19, 1984 (Torruella, C.J.), which refers title 11 proceedings to the Bankruptcy Court. This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## III.    POSITIONS OF THE PARTIES

The issue presented before the Court in the instant case concerns whether the chapter 7 Debtors are entitled to bankruptcy discharge or not.

**A. CHARTIS' POSITION**

Chartis alleges three counts in the complaint for the denial of chapter 7 discharge under §§ 727(a)(2), (a)(4) and (a)(5). First, Chartis claims that the Debtors sold their San Juan property and used the sale proceeds to buy the Montehiedra property and place it in the name of their parents, and then in their children's names, to prevent Chartis from collecting on any judgment entered against the Debtors in the Commonwealth Court action. This alleged scheme continued

---

[22] Docket No. 1 Bankruptcy Case No. 11-03829.

[23] Docket No. 99, "Defendant's Supplemental Response to Plaintiff's Statement of Uncontested Facts," at 13, ¶¶59, 61.

[24] Id.," at 13, ¶55.

[25] Id. at 13, ¶63.

when the Montehiedra property was sold by the Debtors' children to buy the Jardines Property for the exclusive benefit of Debtors and to shield the Debtors' assets from Chartis. By doing so, Chartis alleges that the Debtors concealed an interest in real estate properties by conducting sale transactions among relatives within a span of 12 years before filing for bankruptcy. Chartis also sustains that the Debtors have concealed an ownership interest in their son's corporation, Mets. Chartis further claims that based on these alleged real property transfers, the Debtors have a property interest in these real estate assets and have failed to provide full disclosure of their assets in their bankruptcy schedules. Finally, Chartis accuses the Debtors of providing a false oath by omitting assets in their schedules and in the statement of financial affairs, giving rise to a third objection to discharge. Following the complaint and an extended discovery period, Chartis filed a motion for summary judgment and statement of uncontested facts.[26]

In the motion for summary judgment, Chartis argues that the Debtors should not be granted a discharge because: (1) the Debtors have concealed a property interest in the Montehiedra and Jardines properties as well as in Mets corporation in accordance to § 727(a)(2), (2) as a result of concealing said assets and other real estate holdings, Debtors' have failed to explain the lost or missing real estate assets in accordance to § 727(a)(5), and (3) Debtors' have misstated or omitted assets in the schedules and statement of financial affairs in accordance to § 727(a)(4).

**B. THE DEBTORS' POSITION**

The Debtors deny all the allegations arising from the complaint filed by Chartis.[27] In the opposition motion,[28] the Debtors contend that the objection to discharge arising under § 727(a)(2) is baseless and that the controversy cannot be disposed summarily at this point in the

---

[26] Adversary Case No 11-00203, Docket No. 50, "Motion for summary Judgment."
[27] Docket 73, "Reply in Opposition to Plaintiff's Motion for Summary Judgment," at 1, ¶1.
[28] Docket No. 73.

proceedings for lack of any appropriate evidence to support Chartis' allegations.[29] The Debtors counter Chartis' objection to discharge on § 727(a)(5) grounds as baseless because Chartis has not demonstrated that the Debtors have transferred or concealed an interest in the real estate as required by § 727(a)(2). The Debtors allege that if Chartis cannot establish the Debtors' transfer and concealment of an interest in the real estate properties, there are no grounds as to inquire for the shortcoming of the Debtors' assets or to require of them an explanation for the real estate assets sold in the span of 12 years preceding bankruptcy.[30] Finally, regarding allegations under § 727(a)(4), the Debtors allege oversight on their part to explain the omission of the suit in the local courts from the bankruptcy schedules and statement of financial affairs.[31]

Following an interchange of replies and sur-replies between both parties on the motion for summary judgment, the Court took the matter under advisement.

## IV.    DISCUSSION

### A. STANDARD FOR SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure is made applicable in adversary proceedings through Fed. R. Bankr. P. 7056. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The proponent of a motion for summary judgment may effectively end the case without going to trial unless the party that opposes it can identify a genuine issue as to a material fact.   A genuine issue is one where "the evidence on the point is such that a reasonable jury, drawing favorable inferences, could resolve the fact in the manner urged by the nonmoving party." Smith v. F.W. Morse & Co., Inc., 76 F.3d 413, 428 (1st

---

[29] Id.

[30] Id. at 13, ¶4.

[31] Docket No. 99, "Defendant's Supplemental Response to Plaintiff's Statement of Uncontested Facts," at 13, ¶¶ 55, 61, 63.

Cir. 1996). "Material" means that a contested fact has the potential to alter the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant." Id. (Quotations omitted). A genuine issue cannot be established by the nonmoving party through "conclusory allegations, improbable inferences, and unsupported speculation." Medina–Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). Altogether, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The record must be viewed in the light most favorable to the nonmoving party. Nicolo v. Philip Morris, Inc., 201 F.3d 29, 33 (1st Cir. 2000). All reasonable inferences to be drawn from the facts must be held in the manner most favorable to the nonmovant. In re Varrasso, 37 F.3d 760, 763 (1st Cir. 1994) (other plausible inferences precluded summary judgment in favor of chapter 7 trustee's objection to discharge). Summary judgment is precluded if a reasonable trier of fact can draw other inferences from the totality of the circumstances, as revealed by undisputed evidence. Id. (citing Blanchard v. Peerless Ins. Co., 958 F.2d 483, 488 (1st Cir. 1992)).

**B. DENIAL OF CHAPTER 7 DISCHARGE**

The court must grant the chapter 7 debtor a discharge unless a specific ground for denial of discharge enumerated in § 727(a) is proven to exist. The party objecting to a chapter 7 discharge bears the burden of proving by the preponderance of the evidence a ground for denial of discharge. Fed. R. Bankr. P. 4005; In re Hayes, 254 B.R. 258 (1st Cir. BAP 1999) (Enumerated four elements of preponderant proof for denial of discharge on grounds of fraudulent concealment). See also Grogan v. Garner, 498 U.S. 279, 289-91 (1991) (concluding

that the applicable standard of proof for actions under § 523 is by a preponderance of the evidence and suggesting that the same applies under § 727 objections). The right to a discharge should ordinarily be construed liberally in favor of the debtor and the provisions for its denial construed strictly against the creditor. In re Tully, 818 F.2d. 106, 110 (1st Cir. 1987). "The reasons for denying a discharge to a bankrupt must be real and substantial, not merely technical and conjectural." Id. (citing Dilworth v. Boothe, 69 F.2d. 621, 624 (5th Cir. 1934)). The bar of discharge is an exception to the norm of granting discharge and as such, "exceptions to discharge are narrowly construed in furtherance of the Code's fresh start policy." In re Schifano, 378 F.3d. 60, 66 (1st Cir. 2004) (citation omitted).

## C. THE FRAUDULENT TRANSFER AND CONCEALMENT OF PROPERTY

Turning to Chartis' objections to discharge, Section 727(a)(2)(A) of the Bankruptcy Code states that a court must not grant discharge of a debt if "the debtor, with intent to hinder, delay, or defraud a creditor . . . has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed . . . property of the debtor, within one year before the date of the filing of the petition." The plaintiff must prove that (1) the debtor transferred or concealed property, (2) that the property belonged to the debtor, (3) that it was concealed or transferred within one year of filing the petition for bankruptcy, and (4) that the debtor had the actual intent to hinder, delay or defraud its creditors. Hayes, 229 B.R. at 259.

Generally, any property fraudulently transferred or concealed within one year of filing the bankruptcy case prevents a debtor from obtaining a discharge under Section 727(a)(2). In other words, "anything occurring before that one year period is forgiven." Rosen v. Bezner, 996 F.2d 1527, 1531 (3rd Cir. 1993). However, if there is a continuing concealment of property

interest in the debtor's estate beyond the one period, a debtor may be denied a discharge under the doctrine of continuing concealment established by the Bankruptcy Appellate Panel of the First Circuit in In re Hayes, 254 B.R. 258 (1st Cir. BAP 1999).

The crux of the matter for this objection hinges on the element of concealment within the one year period. Chartis advances its objection to discharge through the continuing concealment doctrine. "Concealment" was defined in Hayes as "hiding or withdrawing property from observation, preventing the discovery of property or withholding knowledge of the existence, ownership or location of property." Hayes, 229 B.R. at 257 (citing In re McIsaac, 19 B.R. 391, 396 (Bankr. D. Mass. 1982)). Concealment may be accomplished by transferring the title of property while retaining some benefits of ownership. Hayes, 229 B.R. at 259 (citations omitted). The transfer of an asset more than one year before bankruptcy, coupled with the ongoing retention of a secret beneficial interest in the asset, may constitute a "continuing concealment" if extending into the critical one-year pre-bankruptcy period. Real estate interests may be concealed within the meaning of § 727(a)(2) even if they are recorded in the Registry of Property. Hayes, 229 B.R. at 259 (citations omitted).

The doctrine of continuous concealment may be properly characterized as an exception to the one-year rule that, in turn, is an element of the ground for the denial of discharge at hand. In extrapolating the doctrine, the Hayes Court configured a two prong rule for the application of the doctrine. "Plaintiffs must prove that [(1)] the requisite conduct, accompanied by [(2)] the requisite intent, actually took place within the year preceding bankruptcy." Id. at 260. (citing Rosen v. Bezner, 996 F.2d. 1527, 1531 (3rd Cir. 1993)).

In the instant case, Chartis alleges that the Debtors "transferred and continuously concealed their equitable interest in the Jardines . . . [p]roperty and [in the Mets corporation].[32]" As to both of these factual averments, the court finds that there is a genuine issue of material dispute as to preclude summary judgment.

**1. REAL ESTATE ASSETS**

According to the undisputed facts, in May of 2007, the Debtors' children sold the Montehiedra property—purchased in July of 2005 from their grandparents.[33]  Shortly thereafter, the Debtors' children purchased the Jardines property in June of 2007.[34]

Chartis alleges that because Debtors moved to the Jardines property, where they live rent free,[35] "they retain a beneficial interest in it since they hold the property for their exclusive benefit."[36] Chartis supports this claim based on In re Kauffman, 675 F.2d 127, 127 (7th Cir. 1981). In that case, the Court of Appeals for the Seventh Circuit affirmed the district court's ruling denying discharge to the debtor by applying the continuing concealment doctrine because the debtor retained an ownership interest after he successfully transferred the title of his house to his wife. The court found that there was a beneficial interest in the property because the debtor used the property as collateral for obtaining loans and debtor claimed ownership of said property in his income taxes.  This conduct transpired for a number of years before the filing of the petition. Id.

---

[32] Docket No. 50, "Motion for Summary Judgment," at 12, ¶3.

[33] Docket No. 95, "Motion in Compliance with Order and Submitting Certified Translations," at 89 (Jose Gonzalez de Jesus, deposition doc. at 85).  See also Docket No. 95, "Motion in Compliance with Order and Submitting Certified Translations," Public Deed, at 104.

[34] Docket No. 99, "Defendant's Supplemental Response to Plaintiff's Statement of Uncontested Facts," at 7, ¶31.

[35] Docket No. 95, "Motion in Compliance with Order and Submitting Certified Translations," at 89 (debtor Jose R. Gonzalez Alonzo deposition doc. at 87); See also Docket No. 95, "Motion in Compliance with Order and Submitting Certified Translations," Jose Gonzalez de Jesus (debtor's child) deposition, at 85.

[36] Docket No. 50, Motion for Summary Judgment, at 12, ¶4.

The undisputed facts indicate that the Debtors' parents purchased the Montehiedra property from a third party and later sold the property to the Debtors' children. The Debtors' children sold the Montehiedra property to another third party and then purchased the Jardines property from an unrelated third party. The Debtors never had title either to the Montehiedra property or to the Jardines property. The fact that the Debtors live in the Jardines property rent free is not in itself sufficient to establish the requisite conduct and intent by advancing the continuing concealment doctrine. Chartis had the burden of providing evidence to establish the material element of a transfer of the Debtors' alleged interest in the San Juan property to the parents—whether by cash proceeds or else—for the purchase of the Montehiedra property or if there was a secret agreement between the Debtors and their parents to appear as titleholders. This alleged scheme continued with Debtors' children into the year before filing for bankruptcy. The matter is purely a question of fact left unascertained in Chartis' motion for summary judgment. The undisputed facts do not establish the material element of a transfer or concealment of property into the one year pre-bankruptcy period. There is a disputed issue of material fact on whether Debtors truly owned and retained an interest in these properties as opposed to their children and parents.

**2. METS CORPORATION**

Chartis presents the idea of Mets serving as a corporate shell for the furtherance of the Debtors' business activities once carried out by their now defunct corporation, San Juan Construction.

Chartis has relied on case law from the Southern District of Florida to establish the presence of a continued ownership interest in Mets into the one year pre-bankruptcy period in order to bar Debtors' discharge. In In re Bellassai, 451 B.R. 594 (Bankr. S.D. Fla. 2011), the

facts on point are somewhat estranged from those in the instant case. The court denied bankruptcy discharge after finding that the debtor had transferred his car care business to his girlfriend 13 years before filing for bankruptcy and retained the fruits of ownership and labor in the company.  The girlfriend purchased the assets of the debtor's defunct company. Furthermore, the debtor's girlfriend was clueless as to the operations of a car care business.

In the case at hand the Debtors' son is president of Mets Corporation while their daughter is its general manager. The evidence from the record has reflected that the Debtors' children have experience in the enterprise they began in 2009. Gonzalez was not an employee on Mets' payroll until July of 2011—two years after Mets was incorporated by his son. Met's principal, Gonzalez de Jesus, worked painting jobs in his youth and had the benefit of his father's expertise in the enterprise of painting. To the extent that Gonzalez' expertise may be attributed to the relative success of his son's corporation—it may not necessarily follow that the Debtors have received the fruits of this success for their own livelihood. Again, the fact that Mets or the Debtors' children provide for Debtors' needs during this time is not tantamount to the Debtors' retention of a secret interest in Mets, but may be at the sufferance or good-will of his son or at the sufferance of Mets. The undisputed facts do not reflect that the Debtors were in fact pulling the strings behind Mets.

Therefore, Chartis' § 727(a)(2) claim may be disregarded because it does not meet the requirements of disposition by summary judgment. Accordingly, the objection to Debtors' discharge on the grounds of transfer and concealment of property is DENIED.

**D. DENIAL OF DISCHARGE FOR FAILURE TO EXPLAIN LOST OR MISSING ASSETS**

Section 727(a)(5) states that the court shall grant the debtor a discharge unless the debtor has failed to explain satisfactorily any loss or deficiency of assets to meet the debtor's liabilities.

The plaintiff bears the burden of proving the objection to discharge for failure to explain satisfactorily the missing assets. 6 Collier on Bankruptcy, ¶ 727.08 at 727–44 (16th ed. 2013). "[O]nce the creditor has introduced some evidence of the disappearance of substantial assets, the burden shifts to the Debtor to explain satisfactorily the losses or deficiencies". In re Brien, 208 B.R. 255, 258 (B.A.P. 1st Cir. 1997) (Citation omitted).  A satisfactory explanation has not been definitively defined, but the debtor must explain the losses or deficiencies in such manner as to convince the court of good faith and businesslike conduct. 6 Collier on Bankruptcy, ¶ 727.08 at 727–45 (16th ed. 2013). What constitutes a "satisfactory" explanation is left to the discretion of the court. In re Potter, 88 B.R. 843, 849 (Bankr. N.D. Ill. 1988) (citing In re Baum, 359 F.2d 811 (7th Cir. 1966)). Section 727(a)(5) may be successfully employed where objectors do not know in what manner the bankrupt's assets were dissipated—but where they can establish the presence of assets before bankruptcy which were not declared as such on the property schedules. In re Tabibian, 289 F.2d 793, 796 (2d Cir. 1961). The debtors are required to present evidence to explain the disappearance or diminution of those assets. Id.

According to Chartis, the real estate assets sold by Debtors' to third parties are unaccounted for to meet Debtors' liabilities. These transactions occurred in the years 1999, 2002, and 2003 for the San Juan property, the Crescent Cove condominium, and the Palmas Doradas condominium, respectively. However, these assets and their proceeds were disposed of some twelve, nine, and eight years, respectively for each property, before Debtors filed for bankruptcy relief. For these transactions to be material, they would have had to be property of the Debtors' estate one year prior to bankruptcy or property of the nonce bankrupt estate. If the assets were concealed before and into the one year period, the statutory predicates of § 727(a)(2) and the continuing concealment doctrine apply. In In re Martin, 698 F.2d 883, 885 (7th Cir. 1983), the court found that the debtor's discharge was objectionable on two independent grounds: (1)

pursuant to § 727(a)(2), the debtor transferred assets four years prior to bankruptcy and withheld an interest in his estate within the year prior to bankruptcy and (2) pursuant to § 727(a)(5), the debtor could not explain missing assets satisfactorily.

The principles and facts on point in <u>Martin</u> do not latch onto the facts prompted by the instant case. The Court of Appeals for the Seventh Circuit found that the doctrine of continuing concealment applied because the debtor had concealed his interest, four years prior to filing for bankruptcy, in a condominium property by having his father appear as the beneficiary owner in the land trust. Concealment existed due to the attendant circumstances that prolonged throughout the four years: the debtor "lived in the condominium, paid all mortgage, maintenance, and insurance charges, voted as a condominium owner, and deducted the interest payments on his own federal income tax returns." <u>Id.</u> The Seventh Circuit found that denial of discharge was warranted, if not for the concealment of assets, then for the debtor's failure to explain satisfactorily the money used by his father for the down payment to buy the condominium. The creditors were able to present evidence that the funds used by the debtor's father came from the debtor. <u>Id.</u> at 887.

In its § 727(a)(2) claim, Chartis has not shown that the sale proceeds of the San Juan Property were an attempt by the Debtors to conceal an interest in the Montehiedra and the Jardines properties into the one year pre-bankruptcy period. Because the transfer and concealment of the San Juan property are disputed issues in Chartis' §727(a)(2) claim, it follows that it is equally disputed under § 727(a)(5).

Regarding the Humacao properties, Chartis has presented its prima facie case under § 727(a)(5) pointing to the Debtors' disposal of these properties within a short period of time to when Chartis presented its lawsuit in the Commonwealth Court. The Debtors have proffered an

explanation for the disposal of these assets. They used the proceeds as down payments to purchase other properties and pay rents and expenses. Given the extensive time period for the transactions in question, the Debtors' explanations for the disposal of the Humacao properties' proceeds are satisfactory at this stage. The evidence from the record is insufficient to deny the Debtors discharge under chapter 7 for failure to explain the loss of assets and to warrant disposition by summary judgment. Hence, Plaintiff's motion for summary judgment objecting to Debtors' discharge on grounds of failure to explain loss or missing assets, pursuant to § 727 (a)(5) is DENIED.

**E. DENIAL OF DISCHARGE FOR FALSE OATH OR ACCOUNT**

Section 727(a)(4)(A) of the Bankruptcy Code states that a court may not discharge a debt if "the debtor knowingly and fraudulently, in or in connection with the case made a false oath or account." The elements that must be proven to bar a debtor from discharge under this provision are (1) that the debtor knowingly and fraudulently made a false oath, and that (2) the false oath was related to a material fact in connection to the bankruptcy case. Schifano, 378 F.3d at 67. In Tully, the First Circuit stated that the standard to determine when an omission is material or not is generally "whether the subject matter 'bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property.'" Tully, 818 F.2d at 111 (citing In re Chalik, 748 F.2d 616, 618 (11th Cir. 1984)). The plaintiff bears the burden of proof to establish by a preponderance of the evidence the elements for an objection to discharge for false oaths. In re Mascolo, 505 F.2d 274, 276 (1st Cir. 1974). The movant for summary disposition must proffer materials of evidentiary or quasi-evidentiary quality—like affidavits or depositions—that support his position. Varrasso, 37 F.3d at 763.

Chartis alleges that Debtors' knowingly misstating assets in their bankruptcy filings is in the effect providing a false oath.[37]  In December 2010, the Debtors brought a damages claim against Autoridad de Edificios Publicos seeking monetary judgment for a slip and fall accident in the local court.[38] In their filings, the Debtors did not disclose in the statement of financial affairs or in schedule B, item 21, any contingent or unliquidated claims pending judgment in the local court.[39] On February 14, 2012, almost seven months after the meeting of creditors was held,[40] the Debtors amended schedule B and the statement of financial affairs in order to include said litigation.  Because this aspect is not subject to factual dispute, the Court may proceed to consider the matter as an issue of law.

In Varrasso, the chapter 7 trustee moved for summary judgment in a case with a similar set of facts as the one at bar. The trustee laid out a prima facie case by substantiating the record through an affidavit that attested to the misstatement of assets in the debtors' original schedules and of their corresponding admissions. The assets were disclosed at a later meeting of creditors. The First Circuit court found that the facts depicted, although undisputed, were not enough to draw an inference of fraudulent intent on the debtor's part for purposes of § 727(a)(4). Varrasso, 37 F.3d at 763.

In contrast, the First Circuit in Tully affirmed an objection to discharge, granted by the bankruptcy court on trial, when the debtors had moved to amend their schedules to include omissions about five months after the original misstated filings.  The First Circuit supported the bankruptcy judge's findings that the debtors' failure to amend their schedules promptly to include omissions constituted "a reckless indifference to the truth equivalent to fraud for

---

[37] The Court will not consider the allegations of the Debtors' misstatement or false oath in bankruptcy schedules of assets alleged as concealed in Chartis' §727 (a)(2) objection to discharge.
[38] Docket No. 99, "Defendant's Supplemental Response to Plaintiff's Statement of Uncontested Facts," at 13, ¶55.
[39] Id. at 13, ¶¶59, 61.
[40] Id. at 13, ¶63.

purposes of section 727(a)(4)(A)." Tully, 818 F.2d at 111. It may be extrapolated from these cases that the timing of rectifications of misstatements is a circumstance that—in a case such as this one—may establish the requisite element of intent to make a false oath. Varrasso, 37 F.3d at 763. Generally, courts have not denied the discharge when the debtor reports an omitted asset at or before the meeting of creditors. In re Guttman, 237 B.R. 643, 648 (Bankr. E.D. Mich. 1999) (citing In re Brown, 108 F.3d 1290, 1294 (10th Cir.1997)); In re Mereshian, 200 B.R. 342, 346 (9th Cir. BAP 1996); In re Ross, 217 B.R. 319, 324 (Bankr.M.D.Fla.1998).

Another conclusion to be made from these cases regards the value of the misstated assets. In Tully, the assets omitted were demand notes of substantial value, accounts receivables and ownership interests in a joint-venture. By contrast, in Varrasso, the misstated assets amounted to tawdry items of personal property. These cases appear to indicate that the relative value of the assets misstated in bankruptcy schedules, when compared to the overall debt, have circumstantial clout "sufficiently potent to establish fraudulent intent beyond hope of contradiction." Varrasso, 37 F.3d at 764.

In Daniels v. Agin, 736 F.3d 70 (1st Cir. 2013), the debtor failed to disclose IRA accounts in his schedules and withheld such information from the trustee and the debtor's creditors. The First Circuit found proper to grant an objection to a debtor's discharge by summary judgment disposition due to discrepancies in the debtor's schedules that—along with the surrounding circumstances of the case—ultimately proved a failure to disclose on the debtor's part.

The Debtors' untimely solicitude to amend the schedules, the value of the claim pursued and the circumstances that surround their coming forward concur as part of the instant case to establish Chartis' prima facie case. "'[O]nce it reasonably appears that the oath is false, the

-17-

burden falls upon the bankrupt to come forward with evidence that he has not committed the offense charged.'" Tully, 818 F.2d at 110 (citing Matter of Mascolo, 505 F.2d 274, 276 (1st Cir. 1974)).

The Debtors acknowledged that the statements in their initial schedules regarding the damages claim litigated in local court were inaccurate. The Debtors explained that the inaccuracies are attributable to their oversight or that of their attorney's and that as such, their oversight cannot be construed so as to provide a fraudulent oath.[41] In their reply to Chartis' summary judgment brief, the Debtors add that apart from this omission there were no more instances of mistake or inadvertence in their statements.[42]

While it is true that the surrounding circumstances Debtors' failure to disclose information in bankruptcy schedules may support an inference of fraudulent intent, there is no per se rule that dictates the weight that must be given to circumstantial evidence supporting an inference of fraud. There is a genuine issue of fact as to the Debtor's indifference to the truth.

Courts have also relied on the debtor's demeanor and testimony to consider the debtor's state of mind in order to determine an inference of fraudulent intent. The bankruptcy judge, in hearing and viewing the witness, is in the best position to make a factual conclusion regarding the debtor's state of mind. In re Schultz, 239 B.R. at 664, 668 (E.D.N.Y. 1999); Moreo, 437 B.R. 40; In re Dubrowsky, 244 B.R. 560 (E.D.N.Y. 2000). While in most cases studied, an objection to the debtor's discharge may be readily granted when the circumstances that surround the case support an inference of fraud at the trial stage, the summary judgment stage requires a more careful study of the debtor's demeanor and testimony in open court; this is also a competing circumstance necessary to ascertain an inference of fraud.

---

[41] Docket No. 73, "Reply in Opposition to Plaintiff's Motion for Summary Judgement," at 13, ¶¶ 2-3.
[42] Id.

It is not clear what prompted the Debtors to finally amend their schedules after the present adversary proceeding was filed. The Debtors present a sufficiently plausible explanation as to draw an inference of oversight favorable to the nonmoving Debtors. The issue of intent precludes disposition by summary judgment. Therefore, the motion for summary judgment for denial of Debtors' discharge on grounds of a false statement or oath pursuant to § 727 (a)(4) is DENIED.

## V. CONCLUSION

The Court denies Plaintiff's motion for summary judgment without prejudice because there are genuine issues of material facts as to (1) whether the Debtors retained a beneficial interest in real estate properties and in Mets, (2) whether Debtors failed to explain satisfactorily the loss of real estate assets and (3) whether there was an element of intent to misstate assets in bankruptcy filings, under 11 U.S.C. § 727(a)(2), (a)(5) and (a)(4). Summary judgment is denied as a matter of law for the § 727(a)(5) claim pertaining to the Humacao properties. A pretrial conference is scheduled for 12/3/2014 at 09:00 A.M. at the U.S. Bankruptcy Court, Jose V. Toledo Federal Building and US Courthouse, 300 Recinto Sur Street, Courtroom 3, Third Floor, San Juan, Puerto Rico. The parties are granted seven (7) days before the pretrial conference to a file a joint pretrial report.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 30 day of September, 2014.

Mildred Caban
Mildred Caban Flores
U. S. Bankruptcy Judge

-19-